UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| TERRANCE SWANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00276-JPH-MG |
| | ) | |
| FRANK VANIHEL, | ) | |
| CHRISTIE, | ) | |
| BYRD, | ) | |
| BOBBIE RIGGS, | ) | |
| MATT LEOHR, | ) | |
| DANIEL BEDWELL, | ) | |
| EWERS, | ) | |
| FISCHER, | ) | |
| ROBERT CARTER, JR., | ) | |
| JAMES BASINGER, | ) | |
| JACK HENDRIX, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION AND
MOTION TO SUBMIT ADDITIONAL EVIDENCE**

Terrance Swann, a prisoner currently incarcerated at Wabash Valley Correctional Facility,

alleges that Warden Frank Vanihel and Classification Supervisor Matt Leohr knowingly failed to

protect him from attacks by other inmates and plan to move him back to general population where

he would be housed with inmates who previously attacked him.  In his motion for preliminary

injunctive relief,[1] Mr. Swann asks the Court to enter an order requiring Defendants to keep him in

restricted housing and prohibiting Defendants from moving him to general population. The Court

set a briefing schedule, and the matter is now fully briefed.

---

[1] Although he titled his motion as a "motion for a temporary restraining order," dkt. 7, it is clear from the substance of his motion that he seeks injunctive relief throughout the duration of this lawsuit so his motion is construed as one for a preliminary injunction. *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (*pro se* pleadings are to be liberally construed).

## I.    BACKGROUND

The facts are taken from Mr. Swann's verified affidavit in support of his motion for a temporary restraining order, dkt. 7-1, his declaration, dkt. 18, the declaration of Wabash Valley's Litigation Liaison, Michael Ellis, dkt. 19-1, and Mr. Swann's additional evidentiary submission, dkt. 21-1.[2]

Mr. Swann alleges that Defendants failed to protect him from being attacked by other inmates in "P-House" and "G-House," the general population units at Wabash Valley. Dkt. 19-1 ¶ 7. Inmates who regularly face discipline are typically housed in these units. *Id.* ¶ 11. No other housing units at Wabash Valley have the same security classification as P- and G-House. *Id.* ¶ 10.

Mr. Swann has requested that he not be placed in G-House or P-House because he fears that other inmates in those units will attack him. *Id.* ¶ 4. He has identified five inmates who are a threat to his safety: Laderrall Lange, Theotis Tolliver, Darren Bann, Swanny Emerson, and "Inmate Flagg."

**Laderrall Lange**. When Mr. Swann was housed at New Castle Correctional Facility in 2020, he was attacked by Mr. Lange and the staff took no responsive action.[3] Dkt. 18 at 12 ¶ 1. Mr. Lange is currently in G-House at Wabash Valley and has told other offenders that he is going to stab Mr. Swann. *Id.* ¶ 2. Mr. Swann requested a bed move to a different unit in G-House, but his request was denied. *See* Dkt. 21-1, Classification Appeal ("Your classification appeal and all related documents have been reviewed. You are appropriately assigned to GHU. There is no monitoring between yourself and . . . Lange or Tolliver.").

---

[2] After this matter was fully briefed, Mr. Swann moved to submit additional evidence. His motion, dkt. [21], is **granted**.
[3] This was the basis of a federal court lawsuit that ultimately settled. *See Swann v. Sevier*, No. 2:20-cv-00320-JPH-MJD.

**Theotis Tolliver**. Mr. Swann was placed in a room with Mr. Tolliver at some time in 2019. Dkt. 18 at 12 ¶ 4. Mr. Tolliver constantly drinks and, when he gets drunk, he acts aggressive toward Mr. Swann including punching him and putting him in a head lock. Dkt. 7-1 ¶ 2. In 2021, Mr. Tolliver assaulted Mr. Swann during recreation time, and as a result, Mr. Swann suffered a damaged jaw. Dkt. 18 at 12 ¶ 3. Mr. Tolliver has since threatened Mr. Swann because Mr. Tolliver became aware that Mr. Swann submitted a grievance about him. *Id.* ¶ 3. Mr. Tolliver has threatened Mr. Swann's life. *Id.* Mr. Swann's request to be transferred to a different unit was denied, and there currently is no monitoring of interactions between Mr. Swann and Mr. Tolliver. Dkt. 21-1.

**Darren Bann**. In 2019, Darren Bann tried to stab Mr. Swann because Mr. Swann was sticking up for another inmate. Dkt. 18 at 12 ¶ 4. It is unclear where Inmate Bann is housed currently.

**Swanny Emerson**. Mr. Swann currently is in the same cell house as Swanny Emerson. *Id.* ¶ 5. Mr. Emerson is the cousin of the victim in Mr. Swann's underlying criminal case. *Id.* Mr. Swann has learned from other offenders that Mr. Emerson plans to attack him. While Mr. Swann and Mr. Emerson are on different ranges, inmates from different ranges often interact so Mr. Swann is in constant fear of being attacked by Mr. Emerson. *Id.* It is not clear where Mr. Emerson is currently housed.

**"Inmate Flagg."** At some point, Mr. Flagg threw a liquid solution in Mr. Swann's face, blinding him temporarily. *Id.* at 13 ¶ 6. Mr. Swann was then brutally beaten. *Id.* Staff moved Mr. Flagg to the other side of P-House, but they still saw each other. It is not clear where Mr. Flagg is currently housed.

## II.    DISCUSSION

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). The plaintiff first must show that "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). The plaintiff bears the burden of proving each element by a preponderance of the evidence. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the plaintiff makes this showing, "the court then must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Id*.

### A.    Success on the Merits

"A movant's showing of likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020) (quotation marks omitted). A "better than negligible" likelihood of success is not enough. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762−63 (7th Cir. 2020). The precise likelihood of success required depends in part on the balance of harms: "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

Here, Mr. Swann alleges that Defendants have failed and continue to fail to protect him from other inmates. To demonstrate some success on the merits of these claims, Mr. Swann must show that Defendants have been deliberately indifferent to an excessive risk to his health or safety. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) ("A prison official [may be] liable for failing to protect an inmate from another prisoner [when] the official knows of and disregards an

4

excessive risk to inmate health or safety.") (internal quotations and citation omitted). He must show (1) the harm complained of is objectively serious and (2) Defendants were aware of and disregarded the risk of harm. *Id.*

Mr. Swann has demonstrated that he is likely to succeed on the merits. First, Mr. Swann has shown that credible, serious threats of the use of physical force against him have been made. Mr. Swann attests that Mr. Tolliver previously used physical force against him when they were cellmates and damaged his jaw; Mr. Tolliver would also punch him and place him in a headlock. Dkt. 18 at 12 ¶ 3; dkt. 7-1 at ¶ 2. Mr. Tolliver has since threatened Mr. Swann's life after he learned Mr. Swann had filed a grievance about him. Dkt. 18 at ¶ 3. Mr. Swann further attests Mr. Lange previously attacked him when they were housed at New Castle. *Id.* at ¶ 1. Mr. Lange has since told other inmates he is going to stab Mr. Swann. *Id.* at ¶ 2. Finally, Mr. Swann has explained that Mr. Emerson has a motive to attack him—he is the cousin of the victim from Mr. Swann's underlying criminal case. Dkt. 18 at ¶ 5. Mr. Swann states that he learned Mr. Emerson was plotting to attack him. *Id.* Although they are on different ranges, inmates from different ranges have recreation together, so Mr. Swann has constantly been in fear of being attacked by Mr. Emerson. *Id.* These assertions—which are uncontradicted—are sufficient to show that Mr. Swann has complained of objectively serious harm. *Gevas*, 798 F.3d at 480 ("There is no dispute that the threat of which [Plaintiff] was complaining (being stabbed by his cellmate) [is an objectively serious harm].").

Mr. Swann has also shown that Defendants are aware of the threats against him and disregarded those threats.  Mr. Swann has attested he told Defendants of this concerns, and they have done nothing. *Id.* at 31 ¶ 8 ("I told L.A. about my concerns with these offenders and I told Frank Vanihel and Matt Leohr. All these official[s] did nothing."). Additionally, Mr. Swann recently submitted for a housing change, and his request was denied. *See* Dkt. 21-1, Classification

Appeal ("Your classification appeal and all related documents have been reviewed. You are appropriately assigned to GHU. There is no monitoring between yourself and . . . Lange or Tolliver."). This evidence is also uncontested. Accordingly, Mr. Swann has shown at least some likelihood of success on his deliberate indifference claims against Warden Vanihel and Classification Specialist Loehr with respect credible threats of violence that have been made by Mr. Tolliver, Mr. Lange, and Mr. Emerson.[4]

In response, Defendants argue that prisons are dangerous places inhabited by violent people and that they responded appropriately when Mr. Swann was previously attacked.

As discussed above, Mr. Swann has identified specific, current threats made by three inmates who have either previously assaulted him or attempted to do so. This shows specific threats of harm, not just a generalized fear of prison life. *Cf. Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008) (generalized allegations that inmate feared for his life and wished to be transferred were insufficient to alert officers to a specific threat). Moreover, Defendants are required to do more than just take responsive action *after* an attack.  They have an affirmative obligation to take action to protect Mr. Swann where they have knowledge of a specific, credible threat to his safety. *See Dongarra v. Smith*, 27 F.4th 174, 180 (3d Cir. 2022) ("When a prison fails to protect a prisoner from a serious risk of harm, he can claim administrative relief or an injunction even before he is harmed. 'A prisoner need not wait until he is actually assaulted before obtaining relief.'") (quoting *Helling v. McKinney*, 509 U.S. 25, 34 (1993)).

For these reasons, Mr. Swann has shown he is likely to succeed on his claims that Defendants have been deliberately indifferent to a serious risk of harm posed by Mr. Tolliver, Mr. Lange, and Mr. Emerson.

---

[4] Mr. Swann has not alleged current threats by Bann and Flagg, and the record does not show where they are housed.

B.      **Irreparable Harm**

"[H]arm is considered irreparable if it cannot be prevented or fully rectified by the final judgment after trial." *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045 (7th Cir. 2017) (internal citations omitted). Here, Mr. Swann has attested that he faces serious bodily injury in the absence of injunctive relief. Specifically, he states that Mr. Tolliver has threatened his life, Mr. Lange has told other offenders that he is going to stab him, and Mr. Emerson has plotted to attack him. Dkt. 18 at 12 ¶¶ 2–5. This is sufficient to demonstrate irreparable harm. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012) (stating that "federal judges must not leave litigants to bear pain indefinitely"); *cf. Baird v. Hodge*, 605 F. App'x 568, 570 (7th Cir. 2015) (inmate failed to show irreparable harm where inmate who had attacked plaintiff had been separated from him and transferred to a different facility); *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978) ("The existence of a continuing constitutional violation constitutes irreparable harm[.]").

Defendants respond that Mr. Swann has not shown that he is likely to suffer irreparable harm. Defendants have submitted a declaration stating that Wabash Valley officials have been working to place Mr. Swann in a cell where he is compatible with "the other offender." Dkt. 19-1 at ¶ 6.  The declaration also provides that offenders, including Mr. Swann, who fear for their safety can request protective custody through a request for protection, a process available to all offenders at Wabash Valley. *Id.* ¶ 12.

However, Mr. Swann has attested that he has told defendants about his concerns and defendants have done nothing. Dkt. 18 at ¶ 8. Further, there is no evidence of what protective custody entails, how long it will last, how it will protect Mr. Swann, or whether there will be contact between Mr. Swann, Mr. Tolliver, and Mr. Lange during this placement. Further, Mr.

Swann has submitted evidence that he requested a bed move to avoid Mr. Tolliver and Mr. Lange, and Wabash Valley officials denied his request and stated that they would not be monitoring them. Dkt. 21-1. On this record, Mr. Swann has shown that the preponderance of the evidence indicates he faces irreparable harm.

### C.    Inadequate Legal Remedies

"The moving party must also demonstrate that he has no adequate remedy at law should the preliminary injunction not issue." *Whitaker*, 858 F.3d at 1046. "This does not require that he demonstrate that the remedy be wholly ineffectual." *Id*. (citing *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)). "Rather, he must demonstrate that any award would be 'seriously deficient as compared to the harm suffered.'" *Id*. (quoting *Foodcomm*, 328 F.3d at 304).

Mr. Swann has demonstrated an award of damages would be seriously deficient in this case. Again, Mr. Swann has received threats that he is going to be stabbed and suffer serious bodily injury absent any injunctive relief. While Defendants contend that money damages are sufficient to make Mr. Swann whole, such an assertion discounts the serious harm Mr. Swann is facing. Mr. Swann has demonstrated his legal remedies are inadequate. *Tay v. Dennison*, 457 F.Supp.3d 657, 687 (S.D. Ill. 2020) (holding money damages were inadequate to make inmate whole from physical or mental abuse).

### D.    Balancing of Harms and Public Interest

In the balancing phase, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018).

Here, the balance of harms weighs in Mr. Swann's favor. The evidence shows that he faces serious bodily harm in absence of injunctive relief while granting injunctive relief would cause only minimal hardship—and no harm—to Defendants.

**E.    Scope of Relief**

Under the Prison Litigation Reform Act ("PLRA"), "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

Here, Mr. Swann asks the Court to order the Defendants to place him in a housing unit other than P-House or G-House.  This relief is too broad because an order directing Defendants to change Mr. Swann's housing classification could intrude on the discretion that they must have to manage Wabash Valley. *Scarver v. Litscher*, 434 F.3d 972, 976 (7th Cir. 2006).  Finding that more narrowly tailored effective relief can be fashioned here, the Court orders Defendants Vanihel and Loehr to develop an individualized plan to keep Mr. Swann safe from the credible threats that have been made against him.  *See Tay*, 457 F.Supp.3d at 688–89 (collecting cases where prison facility was ordered to submit a safety plan to address constitutional deficiencies). The individualized plan must address Mr. Swann's housing assignment relative to the housing assignments of Mr. Tolliver, Mr. Lange, and Mr. Emerson, and identify the measures that will be implemented to ensure no contact between those inmates and Mr. Swann.  Defendants must file a status report summarizing the individualized safety plan for Mr. Swann no later than **October 24, 2022.**

**III.    Conclusion**

For those reasons, Mr. Swann's motion for injunctive relief, dkt. [7], and motion to submit additional evidence, dkt. [21], are **granted**. Pursuant to Federal Rule of Civil Procedure 65(d)(1)

and *MillerCoors LLC v. Anheuser-Busch Cos.*, 940 F.3d 922 (7th Cir. 2019), the Court will enter

the terms of the preliminary injunction set forth in a separate document.

**SO ORDERED.**

Date:  10/18/2022

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

TERRANCE SWANN
956680
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant - Court Only

All Electronically Registered Counsel