UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| TERRANCE SWANN, )<br>)<br>        Plaintiff, )<br>)<br>        v. )<br>)<br>FRANK VANIHEL Warden, )<br>MATT LEOHR, )<br>KEVIN GILMORE, )<br>HOWARD Counselor, )<br>)<br>        Defendants. ) | No. 2:22-cv-00276-JPH-MG |

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GIVING NOTICE OF COURT'S INTENT TO GRANT SUMMARY JUDGMENT ON REMAINING CLAIMS**

Plaintiff Terrance Swann, an inmate at New Castle Correctional Facility, alleges that Defendants violated his Eighth Amendment rights by failing to protect him from other inmates when he was incarcerated at Wabash Valley Correctional Facility. Defendants have moved for summary judgment. For the reasons explained in this Order, Defendants' motion for summary judgment, dkt. [120], is **GRANTED in part**, **DENIED in part**, and the Court gives **notice of its intent to grant summary judgment** on the remaining claims.[1]

        **I.**        **Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and,

---

[1] Mr. Swann's motions to correct errors in his briefings, dkts. [145], [146], are **GRANTED** to the extent that the Court considered his revisions when ruling on the parties' briefings.

instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.   Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to

Mr. Swann and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

At all times relevant to Mr. Swann's allegations:

- Mr. Swann was an inmate housed at Wabash Valley. Dkt. 121-4 at 9-10 (Swann's Deposition).

- Matt Leohr was the supervisor of classification at Wabash Valley. Dkt. 121-1 at 1. His responsibilities included conducting annual classification reviews, conducting administrative restricted housing reviews, providing classification support to unit teams, approving or denying unit team classification recommendations, coordinating reclassifications and intra-facility reassignments, and administering facility classification operational procedures. Dkt. 135-1 at 54-56.

- Kevin Gilmore was the Deputy Warden at Wabash Valley. Dkt. 69 at 2-3. Mr. Leohr often drafted appeal responses for Mr. Gilmore based on the information provided in the inmate's appeal response. Dkt. 121-1 at 2. Mr. Gilmore would then review the materials and approve or deny the appeal. *Id.*

- Robert Howard was a Caseworker within G-House at Wabash Valley, and he served as Mr. Swann's caseworker during the time he was housed within G-House. Dkts. 121-7 at 1, 135-1 at 130, 133. Inmates could talk with their caseworkers about any issues they were having at Wabash Valley including issues with their cellmates. Dkt. 135-1 at 131-132. Caseworkers could assist in relocating inmates to different cells whether it be for more generic reasons or because the inmate was concerned for his own safety. *Id.*

- Frank Vanihel was the warden at Wabash Valley. Dkt. 121-9 at 1. Wardens are responsible for the operation of their respective facilities including the intra-facility classification and assignment of offenders. Dkt. 135-1 at 62. Warden Vanihel was typically not directly involved in cellmate pairings, bed moves, or the grievance process unless a special circumstance necessitated his review, or the grievance had been forwarded to the Office of Investigations and Intelligence ("OII"). Dkt. 121-9 at 1-2. Otherwise, it was common that he delegated these tasks to his subordinate staff. Dkt 135-1 at 62. Warden Vanihel would sometimes walk through the facility so that inmates could address him directly with questions or concerns. *Id.* at 64.

### B. Mr. Swann's Housing with Theotis Tolliver

On or about August 5, 2021, Mr. Swann was assigned to share a cell with Mr. Tolliver, another inmate in the G-House section of Wabash Valley. Dkt. 121-4 at 19–20. There was no significant history of conflict between Mr. Swann and Mr. Tolliver. Dkt. 121-4 at 21-23. Immediately after the placement, Mr. Tolliver began drinking excessively while in their cell and assaulting Mr. Swann every evening. Dkt. 121-4 at 30-31. Mr. Tolliver would hit and punch Mr. Swann, kick him, bite his feet, and twist his feet until it was painful. *Id.* At one point, Mr. Tolliver punched Mr. Swann in the jaw. *Id.* at 33-34. Mr. Tolliver assaulted Mr. Swann nearly every day during the period they were housed together. *Id.* at 31.

Early in his placement with Mr. Tolliver, Mr. Swann approached Warden Vanihel, who was walking the halls of the cellblock, and discussed his concerns related to Mr. Tolliver's assaults. Dkts. 135-1 at 64, 121-4 at 13-14. Warden Vanihel replied to Mr. Swann that he would have someone 'look into it.' *Id.* During the interaction, he took down Mr. Swann's cell location and IDOC number in a notepad; however, nothing was done. Dkt. 135-1 at 103. During this same timeframe in August of 2021, Mr. Swann communicated to Mr. Howard that he and Mr. Tolliver were not compatible. Dkts. 135-1 at 104, 121-4 at 42.

Mr. Swann then wrote to Mr. Leohr on August 29, 2021, stating, "I am constantly being attacked and was assaulted by my celly. I have requested a

bed move several times to Mr. Howard but he refuses to do anything. I please need help. I have sciatica chronic back pain and I can't defend myself." Dkts. 121-8 at 1, 135-1 at 105. Mr. Leohr denies having received or reviewed this letter. Dkt. 121-1 at 4.

Mr. Swann then wrote Warden Vanihel on September 2, stating:

> "I spoke to you on the walkway about constantly being attacked by my celly when he drinks. Sir, you said you would look into it but nothing was done. Since that time I was attacked again and I think my jaw is broken. I am please [sic] request a bed move because the counselor Howard and Mr. Leohr won't do anything."

Dkt. 135-1 at 141.

The same day, Mr. Swann verbally told Mr. Howard that he was being assaulted daily by Mr. Tolliver and hit in the face, arms and ribs. *Id.* at 105. Mr. Howard stated that he would do something the following Monday; however, he took no action. *Id.*

Mr. Howard had the authority to conduct 'time-permittable' bed moves for general housing units, including G-House. Dkt 121-7 at 1-2. Time permittable bed moves were conducted at staff's discretion for non-emergency reasons, and they occurred once an open bed with a compatible cellmate became available. *Id.* Caseworkers could perform emergency bed moves after an inmate filed for protective custody, and they were conducted to prevent the risk of a serious imminent danger to an inmate. *Id.* If an inmate did not file for protective custody, only unit team staff or custody staff supervisors could conduct a bed move. *Id.* However, if an inmate provided sufficient information to warrant an emergency bed move, Mr. Howard would offer an inmate a

5

protective custody request or waiver paperwork and relay that information to the unit team or supervisors. *Id.*

On September 7, 2021, Mr. Swann wrote a message to his mother on GTL, a system that permits inmates to communicate electronically with family members:

> "Mom, everytime my celly gets drunk he bites me or squeezes my feet very hard. He punched me about a week and a half ago. I really don't know what to do because I am trying to stay out of trouble. Please call Central Office IDOC (Indiana Department of Correction) and ask to speak with James Bassinger, Commissioner of Operation and tell him whats going on. Please also call the prison and ask to speak to Warden Vanihel and tell him whats going on as well...."

Dkt. 135-1 at 136 (errors in original).

The next day, Mr. Swann's mother responded on GTL stating, "I got your last message, I need to mail it off also so it can be legally received." *Id.* at 137. She also then called the prison and spoke to Warden Vanihel's secretary to report Mr. Tolliver's abuse. *Id.* at 140. She called again the next day, was put through directly to Warden Vanihel, and told him her concerns. *Id.* Warden Vanihel assured her that these allegations would be investigated by the prison immediately. *Id.*

On September 9, Mr. Swann submitted a grievance stating that Mr. Howard had not taken action regarding his bed move and previous assaults from Mr. Tolliver. *Id.* at 106, 111.

Mr. Swann did not hear back from Mr. Howard, but on September 14, he was removed from his cell by Michelle Woolsey, a prison staff member who is

6

not a defendant in this case, and told he would be relocated to the 1-2 side of G-House. *Id.* at 106.

### C. Mr. Swann's Housing with Other Inmates

Mr. Swann also alleges that Defendants failed to protect him when they decided to house him with or in close physical proximity to inmates Darren Deon Vann, Juan Flagg, Ladderall Lange, Swanny Emerson, Harris, "J.B.", and "Dubi" in P-House.

In September 2021, prison officials designated Mr. Swann to share a cell with Mr. Vann, Dkt. 121-4 at 49, 52. Mr. Swann was afraid to be housed with Mr. Vann, so he resisted when an officer tried to put him into the cell and was thereafter sent to segregation. Dkts. 121-4 at 56, 121-10 at 1. Mr. Swann never did share a cell with Mr. Vann, dkt. 121-1 at 5, and he designates no evidence that Mr. Vann ever attacked, hit, or otherwise harmed him during this time period.

In January 2022, Mr. Swann and Juan Flagg, another inmate in P-House, got into a verbal altercation. Dkt. 121-4 at 61. Mr. Swann attempted to punch Mr. Flagg, but the fight was broken up by other inmates. *Id.* The next morning, Mr. Swann and Mr. Flagg had a physical altercation where Mr. Flagg threw a liquid into Mr. Swann's eyes causing partial blindness. *Id.* at 57-60. After the fight, Warden Vanihel immediately approved Mr. Swann and Mr. Flagg to be placed on 'Individual Housing Unit Administrative Restrictive Housing Status' ("IHARS") to keep them safe and physically separated. Dkt.

7

121-9 at 4. Mr. Swann designates no evidence that any Defendant knew that Mr. Flagg was likely to attack him.

In July 2022, Mr. Swann moved for a temporary restraining order in this case to stop prison officials from placing him in the same cell house as inmates Tolliver, Lange, Flagg, Vann, and "Tray Four" or Swanny Emerson. Dkt. 18 at 6, 13–14. Mr. Swann was nonetheless assigned to G-House, where Mr. Tolliver and Mr. Lange resided. Dkt. 121-6 at 9. Mr. Swann refused to enter the cellblock and was then allowed to remain in the SCU until disciplinary proceedings for his refusal were concluded. Dkt. 121-1 at 7. He was therefore never housed with Mr. Tolliver and/or Mr. Lange at that point and has designated no evidence that he was ever housed with inmate "Tray Four" or Swanny Emerson.

On October 2, Mr. Swann filed for protective custody, claiming that Inmates Harris, "J.B.", and "Dubi" were making plans to rob him. Dkt. 121-6 at 11. The protective custody request was forwarded to the OII for investigation and determination. Dkt. 121-9 at 5. On October 4, Mr. Swann was placed in administrative segregation. Dkt. 121-4 at 72-73. He remained in administrative segregation until his eventual transfer to New Castle Correctional Facility. Dkt. 121-5 at 2-3. Mr. Swann designates no evidence that inmates Harris, J.B., and/or Dubi attacked, hit, or otherwise harmed him.

### D. Mr. Swann's Complaint and the Court's Injunction

On October 18, 2022, the Court screened Mr. Swann's complaint, dkt. 24, *see also* dkt. 57, and issued an injunction ordering the Defendants to

create a plan to protect him from inmates Tolliver, Lange, and Emerson. Dkt. 27 at 9. Defendants contend that this is when Defendants Vanihel, Leohr, and Gilmore first became aware of Mr. Swann's fear of these inmates. Dkt. 122 at 16. Warden Vanihel delegated the execution of the court-ordered safety plan to Defendants Leohr and Gilmore. Dkt. 121-9 at 6. Mr. Leohr then took multiple steps to address the issue by approving Mr. Swann for a facility transfer to New Castle and instituting monitoring statuses between Mr. Swann and all four of his named abusers. Dkt. 121-1 at 8-9. Mr. Gilmore approved Mr. Swann for placement in a protective custody unit at New Castle. *Id.*

### III.     Discussion

"It is well established that prison officials face a duty to protect prisoners from violence at the hands of other prisoners and that the failure to protect can violate the Eighth Amendment." *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "A prisoner seeking to establish a violation of that Eighth Amendment right must show that the prison official was deliberately indifferent to an excessive risk to the prisoner's health or safety." *Id.* "[T]he harm to which the prisoner was exposed must be an objectively serious one" and "the prison official must have actual, not merely constructive, knowledge of the risk to be liable." *Id.* Specifically, he "'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837).

### A. Claim Related to Mr. Swann's Placement with Mr. Tolliver in August 2021

Mr. Swann concedes that Mr. Gilmore did not review his letter before he was removed from his cell shared with Mr. Tolliver. Dkt. 135 at 18. Because there is no evidence that Mr. Gilmore knew that Mr. Tolliver was likely to attack Mr. Swann, he is entitled to summary judgment. For the remaining Defendants, however, summary judgment is denied.

As to defendant Mr. Leohr, there is a genuine dispute of material fact regarding whether he knew of Mr. Tolliver's assaults on Mr. Swann but failed to take responsive action. Mr. Swann testifies he sent a letter to Mr. Leohr regarding the assault on August 29, 2021, and received a response on September 2 denying his request for help and apparently signed by Mr. Leohr. Dkt. 135-1 at 105; dkt. 121-8 at 1. Mr. Leohr attested that he never received this letter. Dkt. 121-1 at 4. Viewing the facts in a light most favorable to Mr. Swann as the Court must on summary judgment, there is designated evidence from which a jury could find that Mr. Leohr knew that Mr. Tolliver had physically attacked Mr. Swann and that Mr. Swann feared another attack, yet Mr. Leohr failed to take responsive action. Accordingly, summary judgment for him must be **DENIED**.

As to Warden Vanihel, Mr. Swann has presented evidence that he discussed Mr. Tolliver's attacks and his fear for his safety with Warden Vanihel in person weeks before his eventual move. Dkt. 135-1 at 103. He has also designated an affidavit from his mother where she attests that she called Warden Vanihel numerous times to report Mr. Tolliver's conduct, *id.* at 139,

and GTL messages between him and his mother, *id.* at 136–138. Warden Vanihel does not recall whether he spoke with Mr. Swann or Mr. Swann's family, dkt. 121-9. From the designated evidence, a reasonable juror could find that Warden Vanihel was aware of the substantial risk Mr. Tolliver posed but was deliberately indifferent to that risk, and so summary judgment must be **DENIED.**

Finally, it is disputed when Mr. Howard became aware of Mr. Tolliver's assaults on Mr. Swann. Mr. Howard testified that he was unaware that Mr. Swann was at risk from Mr. Tolliver. Dkt. 121-7. However, Mr. Swann's grievance document, dkt. 135-1 at 111, specifically notes that he had spoken to Mr. Howard multiple times complaining of ongoing assaults by Mr. Tolliver to no avail. It was not until Mr. Swann submitted this formal grievance to escalate the complaint that prison staff finally acted and had him removed from the cell shared with Mr. Tolliver. There is a genuine dispute of material fact as to whether Mr. Howard knew that Mr. Swann had been attacked by Mr. Tolliver and that Mr. Tolliver presented a substantial risk, yet failed to take responsive action. Summary judgement for Defendant Howard as to this claim must be **DENIED**.

### B. Claims Related to Other Inmates

#### 1. Mr. Flagg

Mr. Swann does not dispute that Defendants cannot be held liable for failing to prevent the assault by Mr. Flagg. Dkt. 135 at 27. He also concedes that Warden Vanihel was not involved in the response to the assault, and—

while he disagrees with their contention that the response to the assault was reasonable—does not dispute that Mr. Leohr and Mr. Gilmore were not involved. *Id.* Therefore, summary judgment is **GRANTED** for all defendants as to this claim.

### 2. Other inmates

Mr. Swann's remaining claims relate to inmates Mr. Vann, Mr. Lange, Mr. Emerson, Mr. Harris, "J.B.", and "Dubi." These claims are only for damages, as the Court's screening order dismissed any claims for injunctive or declaratory relief because Mr. Swann had, by then, been transferred to a new facility. *See* dkt. 57. There is no designated evidence, however, that Mr. Swann was ever attacked, hit, or otherwise harmed by any of these inmates during the relevant timeframe. Without having suffered an actual injury, Mr. Swann cannot make "a compensable claim under the Eighth Amendment." *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996) (noting that it is the "assault itself, rather than any fear of assault" that supports a failure-to-protect claim, and "failure to prevent exposure to risk of harm . . . does not entitle [the plaintiff] to monetary compensation."); *see Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) ("[Plaintiff's] claim fails on the basic proposition that he has sued for damages under § 1983 and alleged a constitutional tort (an Eighth Amendment violation) without then developing evidence of a recoverable injury."). Furthermore, while Mr. Swann argues that defendants did not adhere to the adult offender classification policy on housing assignments with respect to his housing assignments, *see* dkt. 135, violation of a prison policy alone does not

12

show a violation of a constitutional right. *Scott v. Edinburg*, 346 F.3d 752 (7th Cir. 2003) (Section 1983 "protects plaintiffs from constitutional violations, not violations of . . . departmental regulations.").

In sum, it appears that Mr. Swann has no compensable claim against any defendant based on his contact with or proximity to Mr. Vann, Mr. Lange, Mr. Emerson, Mr. Harris, "J.B.", and "Dubi." The Court therefore gives Mr. Swann notice under Rule 56(f)(1) of its intent to grant summary judgment for Defendants on these remaining claims. Mr. Swann shall have **until April 18, 2025**, to respond to this notice and explain why he should otherwise be able to proceed on these claims.

### IV.  Motions for Sanctions

Pending before the court are Mr. Swann's first and second motions for sanctions alleging numerous violations of Rule 11 of the Federal Rules of Civil Procedure. Dkts. 129, 143. The Defendants' motion to withdraw exhibit, dkt. [142], is **GRANTED**. The **clerk is directed** to strike exhibit 3, dkt. 121-3, from the record. For the following reasons, Mr. Swann's motions for sanctions, dkts. [129], [143], are **DENIED**.

In his first motion for sanctions, dkt. 129, Mr. Swann argued that Defendant Howard made misrepresentations in his affidavit that conflicted with his interrogatory responses related to his knowledge of Mr. Swann's complaints and his pairing of Mr. Vann and Mr. Swann. *Id.* at 1-2. Further, he argues that Mr. Leohr made material misrepresentations that Mr. Swann and Mr. Tolliver were compatible as cellmates by referencing a scoresheet, generated as part of

13

the cellmate assignment process, that contained inaccuracies. *Id.* at 3-4. The Defendants responded by stating that Defendant Howard's interrogatory responses and affidavit were completed 50 days apart and therefore, his recollection may have varied during that time period. Dkt. 131 at 1-2. They then agreed that the scoresheet was inaccurate due to an error in the computer system. *Id.* at 3.

Defendants subsequently filed a motion to withdraw designation of evidence, dkt. 142, withdrawing the scoresheet identified as "exhibit C" in its entirety and all references to the scoresheet in their brief and exhibits. Mr. Swann then filed his second motion for sanctions, dkt. 129, which also contained arguments about various inaccuracies and contentions related to the Defendants' statements. Dkt. 143.

By presenting a pleading to the court, an attorney "certifies to the best of the person's knowledge . . . the factual contentions have evidentiary support." *See* Fed. R. Civ. P. Rule 11(b)(4). Rule 11(b) "is principally designed to prevent baseless filings." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020). "If the court determines that a lawyer or party has violated Rule 11(b), the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.*; Fed. R. Civ. P. 11(c).

Here, while there may be some inconsistencies or discrepancies between Mr. Howard's interrogatory responses and affidavit, such differences in testimony—which could be plausibly explained by a change in Mr. Howard's

14

memory of specific events—"normally affect the witness's credibility rather than the admissibility of the testimony." *United States v. Funds*, 816 F.3d 903, 907 (7th Cir. 2016). Further, Mr. Swann's argument that the Defendants' scoresheet was inaccurate has now been remedied. Mr. Swann has not shown that the Defendants' behavior warrants the imposition of sanctions, so his motions for sanctions are denied.

## V. Conclusion

Mr. Swann's motions to correct errors is his briefings, dkts. [145], [146] are **GRANTED** to the extent that the Court considered these revisions when ruling on this motion.

The Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**. Dkt. [120]. Summary judgment for Mr. Swann's claims against Warden Vanihel, Mr. Leohr, and Mr. Howard in relation to their failure to protect Mr. Swann from Mr. Tolliver's assaults is **DENIED**, but **GRANTED** as to Mr. Gilmore.

Summary judgment is **GRANTED** to all defendants as to the claim regarding Mr. Flagg's assault.

As discussed above, Mr. Swann shall have **until April 18, 2025, to show why summary judgment should not also issue for all defendants on all remaining claims** regarding other inmates. Failure to respond will result in the issuance of summary judgment.

The Defendants' motion to withdraw exhibit, dkt. [142], is **GRANTED**. The **clerk is directed** to strike exhibit 3, dkt. 121-3, from the record.

15

Mr. Swann's motions for sanctions, dkts. [129], [143], are **DENIED**.

The Court prefers that Mr. Swann be represented by counsel for the remainder of this action. The **clerk is directed** to send Mr. Swann a motion for assistance recruiting counsel with his copy of this Order. Mr. Swann has **until April 11, 2025**, to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed pro se. Once the motion has been ruled on and counsel has been recruited, the magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

**SO ORDERED.**

Date: 3/21/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

TERRANCE SWANN
956680
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All Electronically Registered Counsel

Magistrate Judge Mario Garcia